## In Re: Egger

*Peter J. Fagan,* for petitioner.
*Joseph R. Ferdinand,* for respondent.

BROMINSKI, *J.,* December 22, 1983—This matter comes before the court upon petition of Karen Tray, natural mother of Kevin John Egger, to change his name to Kevin John Tray (Kevin).

At the hearing conducted on December 12, 1983, it was established that Kevin is seven years of age, date of birth, February 21, 1976. That his natural father is John Egger, who separated from Mrs. Tray in February, 1978, and they were divorced in September, 1979. Kevin was age two when the parents separated. While his natural father supported Kevin, Mrs. Tray had to resort to wage attachment to keep him current; that Mr. Egger has had relatively no contact with his son, seeing him, at best, three or four times since 1978; he has not sought custody or visitation rights with his son; that the only extended time he spent with his son was the Christmas of 1981, for about 20 minutes. Mrs. Tray does not hide the fact from Kevin that Mr. Egger is his natural father and Kevin recognizes this; that Mr. Egger lives in North Wales, near Norristown, Pa., and visits Hazleton nearly once a month, where Kevin and Mrs. Tray reside, and he has never once called, contacted or made inquiry of Kevin's whereabouts or his welfare. Mr. Egger testified that he had made a judgment, after a telephone conversation with Kevin, shortly after the Christmas of 1981, that he would wait until Kevin was a little older to establish contact with him. He also assessed the fact that he works out of State, for his lack of contact with Kevin. The record shows that he was out of State only in 1978.

In the meantime, Mrs. Egger married Gerald Tray in September of 1981, and Kevin resides with

them, along with a 17 month old son, Timothy Tray. As a matter of fact, the reason for the change of name was provoked by Kevin. He inquired of his mother why his name was not the same as his half brother, Timothy Tray. The court inquired into the reason for the name change in chambers, in the presence of his natural father, Mr. Egger, and his natural mother, Mrs. Tray. Kevin recognized his natural father, but wanted his name changed to Tray, because of his step brother. The court finds, as a matter of fact, that his lack of contact with his natural father also motivated this request.

The court also finds, as a matter of fact, that Mrs. Tray is a genuine, good mother. She has never discouraged Kevin's association with his father and his paternal grandparents. The court finds that this was not a reciprocal feeling in Kevin's father and the paternal grandmother. The court also finds that Mr. Egger's claim that he wanted to wait until Kevin is a little bit older to re-establish a relationship with him is not genuine. The fact that he travels to Hazleton almost once a month, without any contact with his son, is testimony to this fact.

It is difficult to estrange a father and son relationship by changing the son's name, but under the circumstances, the court finds that it is in the child's best interest to change his name. The court finds this by clear and convincing proof.

This is not a case of — let's wait and see what the child wants when he grows older, — as in the DeVane Petition, 3 D. & C. 3d 515 (1977), because Kevin has found a home with Mr. and Mrs. Tray and his step brother, Timothy, and to refuse the request might lead to uncertainties in the boy's mind that would lead to unrest and embarrassment.

As a result of divorce, some children of tender age have enough emotional problems. Kevin has an

identity problem. This is not a case in which the natural mother urged the child to change his name, nor is it a case where it is the mother's idea or motivation to change his name.

This case is unlike the DiBacco Petition, 32 D. & C. 2d 90 (1963), wherein the natural father wanted to preserve his parental relationship with his children, and the DeVane Petition, supra, wherein the natural mother wanted her eight year old daughter to assume her maiden name after a divorce from the natural father. The court enunciated in the latter case, at pp. 516, 517:

"Of course, a court would be reluctant to grant a very youthful minor's petition for a change of name. . . ."

"With this primary object before us, we see nothing to help the welfare of the child by granting this petition. We are convinced that, were we to grant it, we would be lending our aid to the 'estrangement of father and child.' To decree a change of name would simply be another step in the direction, encouraged by the mother, of complete severance of the father-child relationship. *It is pretty plain that the mother is the one who wants the change,* for her son is too young to know and I doubt strongly his capacity to understand the nature of the proceeding, let alone its initiation. . . ." (Emphasis added.)

This court is aware that Kevin is of a tender age, and although the court is neither a psychiatrist nor psychologist, Kevin's present status may lead to emotional problems and stresses. While the estrangement may leave Mr. Egger chagrined, at first, he can blame that on his conduct for the past four or five years.

Legally, we are not interested in the natural mother's or natural father's best interest, but that of the child.

We therefore enter the following

ORDER

It is hereby ordered, adjudged and decreed that the prayer of the petition be granted and that Kevin John Egger be hereinafter known as Kevin John Tray.